UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STERLING JAMES HOLLINS,

        Plaintiff,

    v.

NANCY A. BERRYHILL,

        Defendant.

Case No. 16-cv-04379-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 17

### INTRODUCTION

Plaintiff Sterling James Hollins ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Compl., Dkt. No. 1. Pending before the Court are the parties' cross-motions for summary judgment. Pl.'s Mot., Dkt. No. 16; Def.'s Mot., Dkt. No. 17. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and the relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's motion and **DENIES** Defendant's cross-motion for the reasons set forth below.

### BACKGROUND

Plaintiff complained of migraines and right knee pain starting in 2011. AR 264. In May 2012, he contracted Ludwig's angina, a mouth infection that spread systemically through his brain, heart, and other vital organs; he spent 15 days as an inpatient in the Intensive Care Unit of the Alameda County Medical Center. AR 254, 281, 286, 328, 340, 351, 404. Plaintiff needs a cane to stand and to walk. AR 17. He has consistently tested negative for rheumatoid factor and

antinuclear antibodies; he has not exhibited joint deformities. AR 380, 423, 430, 442-43, 448. He suffers from cognitive and affective disorders. AR 13.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On July 18, 2012, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on May 14, 2012. AR 184. The Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 59. Plaintiff subsequently filed a request for reconsideration, which was denied. AR 69. On March 11, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 102. Plaintiff also filed a request for good cause for filing his appeal twenty-two days late, which the SSA granted. AR 109-11. ALJ Mary Parnow conducted a hearing on October 11, 2014. AR 30-57. Plaintiff testified in person at the hearing and was represented by counsel, Katherine Siegried. AR 11, 30-32. The ALJ also heard testimony from Vocational Expert ("VE") Robert Raschke and medical expert Dr. Gilberto Munoz. *Id*.

### A. Medical Evidence of Record

Plaintiff was examined by four SSA consultants: Dr. Rana, Dr. Tang, Dr. Van Gaasbeek, and Dr. Snyder. AR 374-376, 396-99, 400-03, 404-08. His records were reviewed by four SSA Reviewing Physicians: Dr. Williams, Dr. Blanco, Dr. Fair, and Dr. Schumacher. AR 64, 66, 69, 77.

#### 1. Dr. Farah M. Rana, M.D.

Dr. Rana performed an internal medicine evaluation of Plaintiff on behalf of the SSA on January 16, 2013. AR 374-76. Dr. Rana observed Plaintiff walked with a mild limp and used a cane to support himself while walking, but all the tests and examinations she performed were normal. *Id*. Dr. Rana noted Plaintiff's history of Ludwig's angina in May 2012, migraines, and right knee pain with probable strain/tendinitis. AR 376. In relevant part, Dr. Rana opined Plaintiff could stand and walk up to six hours with breaks in an eight-hour work day; had no sitting limitations; could carry 25 pounds frequently and 50 pounds occasionally; and did not need any assistive devices. *Id*.

2.    Dr. Robert Tang, M.D.

Internist Dr. Tang performed a comprehensive internal medicine evaluation of Plaintiff on September 18, 2013 on behalf of the SSA.  AR 396-99.  Dr. Tang observed that Plaintiff walked with a cane; appeared to have not more than 75 percent weight-bearing on the right step due to hip discomfort; 3/5 strength in the right hip; and decreased pinprick sensation on the right forearm, right hand, and lower legs.  *Id*.  He diagnosed Plaintiff with severe gum infection resulting in sepsis and lower extremity swelling; residual neuropathy in the right forearm and both lower legs; right step decreased weight-bearing due to hip pain; and neuropathy due to main-end organ.  AR 398-99.  His findings were otherwise normal.  AR 396-99.  In relevant part, Dr. Tang opined that Plaintiff could walk up to six hours with a cane, had no limitation in sitting, had medical necessity for a cane, could carry 20 pounds occasionally and 10 pounds frequently, and had no postural, manipulative, or height limitations.  AR 399.

3.    Dr. Kyle Van Gaasbeek, Psy. D.

Dr. Van Gaasbeek, conducted a comprehensive psychiatric evaluation of Plaintiff on September 21, 2013 at the request of the SSA.  AR 400-403.  In relevant part, Dr. Van Gaasbeek found Plaintiff had "quite slow" movements, "concentration, persistence and pace" were "a bit slow," his thoughts were "a bit slow to organize," his speech "a bit pedantic"; blunted affect and self-described bad mood; average intellectual functioning; was able to recall three out of three objects for immediate memory; could recall one out of three words after several minutes, but could remember a second one on cue; had adequate past memory.  *Id*.  He further found Plaintiff had a fair fund of knowledge, reduced calculation ability, fair concentration, adequate abstract thinking, could distinguish similarities and differences, and had adequate judgment and insight.  *Id*.  He described Plaintiff as "open and cooperative."  AR 401.

Dr. Van Gaasbeek diagnosed Plaintiff with cognitive and depressive disorders, and assessed Plaintiff as having a GAF[1] score of 45.  AR 402-03.  While Dr. Van Gaasbeek opined

---

[1] "A Global Assessment of Functioning ['GAF'] score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and

1    Plaintiff's depression was treatable and was "a reaction to his health decline," he believed

2    Plaintiff's cognitive problems "may potentially be chronic" and found "indications that they

3    developed after his infection and emergency surgery." AR 403. Dr. Van Gaasbeek opined

4    Plaintiff was "moderately impaired" in his ability to perform detailed and complex tasks, interact

5    with coworkers and the public, perform work activities on a consistent basis without special or

6    additional instruction, ability to maintain regular attendance, and dealing with the usual stress

7    encountered in a competitive work environment. AR 403. He also found Plaintiff was

8    substantially impaired in completing a normal workday and workweek without interruptions from

9    his psychiatric condition. *Id.*

10            4.    Dr. Jodi Snyder, Psy. D.

11           Dr. Snyder, performed a psychological evaluation of Plaintiff on December 3, 2013 at the

12   SSA's request. AR 404-408. Dr. Snyder observed Plaintiff put forth "good effort during testing"

13   but that his gross motor skills appeared abnormal, he walked with a cane and moved "very

14   slowly," he had difficulty with cognitive sequencing and shifting sets of information; psychomotor

15   retardation was noted. AR 404. The mental status exam Dr. Snyder administered was mostly

16   normal, except for speech (spoke slowly and had difficulty with annunciation), attention ("poor"),

17   memory (recalled 0/3 words after brief delay), mood (depressed/anxious), and affect (sad). AR

18   406. Plaintiff tested borderline in verbal comprehension, perceptual reasoning, working memory

19   and full scale IQ ("FSIQ"); he tested "extremely low" in processing speed. AR 406. He tested

20   "low average" in auditory memory index and borderline in visual working memory index. AR

21   407. He took 1:37 to complete a Trail A test, and 4:38 to complete a Trail B test; these results

22   placed him below the first percentile of the population and exhibited a "severe deficit" in both

---

24   occupational functioning, without regard to impairments in functioning due to physical or
     environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical*

25   *Manual of Mental Disorders* ("DSM–IV") at 32 (4th Ed. 2000). A GAF score of 41–50 indicates
     '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR

26   any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to
     keep a job).' DSM–IV at 34." *Thomas v. Astrue*, 2009 WL 151488, at *3 n.5 (C.D. Cal. Jan. 21,

27   2009) (capitalization in original).

28                                          4

trails. *Id.*[2] Dr. Snyder opined Plaintiff's borderline to extremely low range performance was "most likely secondary to his residual cognitive deficits from Ludwig's angina." AR 407.

Dr. Snyder's prognosis was guarded: Plaintiff "continues to have significant residual cognitive difficulties secondary to his medical issue of Ludwig's angina." AR 407. She suggested he "may benefit from an acquired brain injury support group to address the cognitive changes as well as support and mental health treatment to address his mood symptoms." AR 407-08. Based on the results of her tests, a clinical interview, and Plaintiff's personal history and documentation, she opined that from a psychological standpoint alone, Plaintiff was "moderately impaired" in his ability to follow complex/detailed instructions; maintain adequate pace or persistence to perform complex tasks; maintain adequate attention/concentration; adapt to changes in job routine; withstand stress of a routine workday; interact appropriately with coworkers, supervisors and the public on a regular basis; and adapt to changes, hazards or stressors in the regular workplace setting. AR 408. She assigned Plaintiff a GAF score of 50. AR 408.

### 5. Dr. Camille B. Williams, M.D.

Dr. Williams gave "great weight" to an opinion dated February 4, 2013 from "Pacific Health Clinic about Plaintiff's residual functional capacity." AR 65. On March 29, 2013, Dr. Williams opined based on the "Pacific Health Clinic" opinion that Plaintiff had the ability to perform "medium [Residual Function Capacity ('RFC')]"; could lift 50 pounds occasionally and 25 pounds frequently; could stand and walk and sit about six hours in an 8-hour workday; and had no other limitations. AR 65-66.

The Court has found no record from "Pacific Health Clinic" dated February 4, 2013. The Court notes Dr. Rana's opinion is provided on a Pacific Health Clinic, Inc. letter head, and is dated January 16, 2013. AR 374.

---

[2] The Trail Making Test is sometimes helpful in the identification of organic brain dysfunction. Cutoff scores for the identification of organic brain dysfunction are above 45 seconds for Trail A and 97 seconds for Trail B. *See Daniels v. Colvin*, 2016 WL 7118275, at *3 (S.D. Ala. Dec. 5, 2016).

United States District Court
Northern District of California

### 6. Dr. Stephen Fair, Ph. D.

Dr. Fair reviewed medical records dated February 4, 2013, November 9, 2012, and September 4, 2012. AR 61-62. On March 29, 2013, Dr. Fair found Plaintiff had no medically determinable mental health impairment because "[t]here is no evidence that the clmt receives formal mh tx"; Plaintiff's primary care provider "indicated no clmt hx of depression" and Dr. Fair found "no evidence of clmt mh signs, sxs, or dx." AR 64.

### 7. Dr. Alicia V. Blando, M.D.

Dr. Blando reviewed Plaintiff's medical records on reconsideration. On November 13, 2013, she opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and walk for about six hours; and could sit for about six hours in an 8-hour workday; and had no other limitations. AR 80-81. She noted Plaintiff had a cane, but did not opine that he needed one for ambulation and all activities. AR 80.

### 8. Dr. Tim Schumacher, Ph.D.

Dr. Schumacher reviewed Plaintiff's psychological records on reconsideration. AR 69-84. Dr. Schumacher found Plaintiff's memory problems were not consistent with other objective evidence; that he was not limited by memory or inability to understand; had limitations with sustained concentration and persistence; was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms; he also was moderately limited in several aspects of social interactions. AR 79, 81-83. In reviewing the results of the psychological testing performed by Dr. Snyder, Dr. Schumacher found that Plaintiff's borderline scores "do not appear consistent with other mental status findings such as being able to perform serial 3s and 7s as well as being able to spell world backwards. His WMS auditory memory was low average, and this is inconsistent with not being able to remember 3 objects after an interpolated delay." AR 77.

## B. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-

step sequential analysis to determine whether a Social Security claimant is disabled.[3] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since June 26, 2012. AR 13.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: history of Ludwig's angina; history of severe gum infection resulting in sepsis and head, neck, and lower extremity swelling; radiculopathy of the right forearm and bilateral lower extremities; marginal obesity; migraine headaches; history of right knee tendonitis; an affective disorder; and a cognitive disorder. AR 13.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt.

---

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 14-17. She evaluated whether Plaintiff's impairments met or medically equaled Listings 1.02 (major dysfunction of joint), 11.14 (peripheral neuropathies), 14.07 (immune deficiency disorders), 12.02, 12.04, 12.05 and 12.06 (mental impairments). *Id.* She also considered the combined effects of Plaintiff's obesity on his ability to perform routine movement and necessary physical activity within the work environment. AR 14.

Before proceeding to step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work, except he can stand and walk for two hours, and sit for six hours in two hour increments; requires a cane for standing and walking; can lift and carry ten pounds both frequently and occasionally; he can occasionally bend, stoop, kneel, crouch and crawl; should never climb ladders, ropes, or scaffolding; can occasionally reach overhead with the right upper extremity; should not work at unprotected heights or with heavy machinery; and should not engage in any commercial driving. AR 17-22.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not

disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff could not perform past relevant work. AR 22.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpt. P, App. 2. *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that exist in significant numbers in the national economy that Plaintiff can perform: shade assembler and lens block gauger. AR 23.

**C.     ALJ's Decision and Plaintiff's Appeal**

On February 9, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 11-24. This decision became final when the Appeals Council declined to review it on June 21, 2016. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On January 3, 2017, Plaintiff filed the present Motion for Summary Judgment. On January 31, Defendant filed a Cross-Motion for Summary Judgment. Plaintiff filed a Reply on February 13, 2017. Dkt. No. 18.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports

and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

### A.        Examining Physicians

Plaintiff argues the ALJ erred in rejecting the opinions of the two consultants who performed comprehensive psychological evaluations in favor of the opinion of Dr. Schumacher, a non-examining consultant who reviewed his records. *See* Pl.'s Mot. at 7-12. Both Drs. Van Gaasbeek and Snyder opined Plaintiff had significant cognitive difficulties and was moderately impaired in numerous work-related abilities; Dr. Van Gaasbeek opined Plaintiff was substantially impaired in the ability to complete a normal workday and workweek without interruption. *See supra*. Because "the record as a whole does not support significant limitation in social functioning," the ALJ only gave "partial weight" to Dr. Van Gaasbeek's opinion. AR 21. The ALJ only gave partial weight to Dr. Snyder's opinion because "this one time diagnosis of a cognitive disorder does not meet the durational requirements for a severe impairment" and because "the record as a whole does not support significant limitations in social functioning." *Id*. Instead, the ALJ gave "great weight" to a non-examining consultant's opinion that Plaintiff could engage in unskilled, one- to two-step assignments with routine contacts with co-workers and

supervisors "because the record as a whole supports it."  AR 21-22.

The opinion of an examining physician generally is entitled to greater weight than the opinion of a non-examining physician (*Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)), and the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician (*Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).  In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  *Ryan*, 528 F.3d at 1198 (quotation marks and citation omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citation omitted).

An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "The ALJ must do more than offer [] conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citation omitted).  An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion.  *See id.*  The ALJ has not satisfied the substantial evidence requirement.

First, the ALJ's conclusory statements that the record as a whole does not support the limitations found by the two examining physicians—based on their in-person examinations and cognitive testing of Plaintiff—is not the type of "detailed and thorough summary of the facts and conflicting clinical evidence" that is required to reject such opinions.  *Reddick*, 157 F.3d at 725.  Drs. Snyder's and Van Gaasbeek's opinions were consistent with each other, and were not contradicted by the opinion of any treating or examining physician.

Second, the ALJ could rely upon the opinion of non-examining consultant Dr. Schumacher

11

as substantial evidence to reject the opinions of Drs. Snyder and Van Gaasbeek, but only if Dr.

Schumacher's opinions were consistent with independent clinical findings or other evidence in the

record. *Thomas*, 278 F.3d at 957. Dr. Schumacher appears to have based his findings solely on

his interpretation of Dr. Snyder's evaluation and the results of the tests she administered. *See* AR

77, 79. Moreover, his evaluation of her clinical findings was both internally inconsistent and

conclusory. *See* AR 79 (giving "great weight" to Dr. Snyder's opinion; finding Dr. Snyder's

findings "somewhat overly restrictive" because "Clt's memory problems are not consistent with

other objective evidence"); AR 77 (borderline scores inconsistent with ability to perform serial 3s

and 7s as well as spell "world" backwards). Neither Dr. Schumacher nor the ALJ explain how

Plaintiff's ability to perform serial 3s and 7s and spell "world" backwards is inconsistent with the

results of the clinical testing performed by Drs. Snyder and Van Gaasbeek, much less with those

examiners' interpretation of the results. Dr. Schumacher's opinions are "brief, conclusory, and

inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see also* 20 C.F.R. §

404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with

you, the weight we will give their medical opinions will depend on the degree to which they

provide supporting explanations for their medical opinions."). The ALJ erred in relying on Dr.

Schumacher's less extensive findings to reject the examining physicians' findings. *See*

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

Third, the ALJ did not address other significant findings made by the two examining

physicians. For example, the ALJ did not acknowledge Dr. Van Gaasbeek's finding that

Plaintiff's ability to complete a normal workday and workweek without interruptions from a

psychiatric condition is substantially impaired. *See* AR 21, 403. The ALJ also did not address Dr.

Snyder's testing showing a "severe deficit" in both Trails A and B, her assessment that Plaintiff

continued to have "significant residual cognitive difficulties secondary to his medical issue of

Ludwig's angina," Dr. Snyder's recommendation that Plaintiff join a brain injury support group,

or the relevance of Dr. Snyder's finding that Plaintiff had a full scale IQ of 70 and a GAF score of

50. AR 21, 407-08.

Finally, that Dr. Snyder's opinion was based on a "one time diagnosis" (AR 21) is not a basis for rejecting that opinion in favor of the opinion of a physician who never examined Plaintiff. *See* 20 C.F.R. § 404.1527(c) ("Generally, [the SSA] give[s] more weight to the medical opinion of a source who has examined you than the medical opinion of a medical source who has not examined you" and gives more weight to the opinion of a treating physician who has examined a claimant over time than to that of a consultative examiner). To the extent the ALJ discounted the opinion because the disorder did not meet the durational requirement for a severe impairment (AR 21), there is no substantial evidence in the record to support that finding. Both Drs. Snyder and Van Gaasbeek opined Plaintiff's mental and cognitive difficulties resulted from his Ludwig's angina, for which he was treated in May 2012—more than one year before either doctor evaluated Plaintiff; neither opined his cognitive difficulties would improve in the short term, if at all. *See* AR 403 (cognitive problems may be chronic; indication they developed after infection and surgery), 407 (prognosis is guarded; "significant residual cognitive difficulties secondary" to infection).

The Court finds the ALJ erred in failing to provide specific and legitimate reasons, based on substantial evidence, for partially rejecting the opinions of the two examining physicians.

## B. Plaintiff's Credibility

Where there is no showing that a claimant is malingering, and where the record includes objective medical evidence establishing that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an ALJ can only make an adverse credibility finding based on substantial evidence under the "clear and convincing" standard. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). There is no indication of malingering in the record. Plaintiff has presented objective medical evidence demonstrating that he suffered from a life threatening infection that spread to his brain; examining physicians found Plaintiff was a reliable historian who was cooperative and put forth good effort in testing; those examiners opined Plaintiff's cognitive difficulties were the result of his infection and his mental impairments were a reaction to

13

his health decline. Thus, there is substantial evidence that his condition could reasonably produce the symptoms complained of, and the ALJ found as much (AR 18). The ALJ's adverse credibility finding therefore must be based on clear and convincing substantial evidence. *See Carmickle*, 533 F.3d at 1160. In addition, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

The ALJ found Plaintiff's statements regarding the limiting effects of his conditions "not entirely credible." AR 18-19. Unfortunately, the ALJ does not actually identify what testimony or statements by Plaintiff she found not entirely credible (*see* AR 17-22), and the Court thus cannot review the sufficiency of the ALJ's reasons. *See* AR 18 (describing Plaintiff's testimony, but failing to specify which statements, if any, ALJ found not credible). This was error. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *see also* SSR 96-7p (ALJ's credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[4] Defendant's *post hoc* rationalization about the ALJ's bases for discounting Plaintiff's credibility (Opp'n at 6-8) is impermissible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles

---

[4] SSR 96-7p was superseded by SSR 16-3p effective March 16, 2016. SSR 16-3p eliminates language pertaining to a claimant's credibility, and reflects recommendations that the SSA clarify "that subjective symptom evaluation is not an examination of an individual's character, but rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work." SSR 16-3p at 1 n.1. SSR 96-7p applies to the Court's review of the ALJ's decision, which was issued before March 16, 2017. *See* Def.'s Mot. at 6 n.1.

United States District Court
Northern District of California

of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. Generally when the SSA does not determine a claimant's application properly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Because there are outstanding issues that must be resolved before a determination of disability can be made, this case is **REMANDED**[5] for further administrative proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: June 7, 2017

_____

MARIA-ELENA JAMES
United States Magistrate Judge

---

[5] The Court does not reach Plaintiff's final two arguments. First, because the ALJ's assessment of Plaintiff's RFC may change after she reexamines the MER, the Court does not address Plaintiff's argument that the VE's testimony did not constitute substantial evidence Plaintiff could perform work as a lens block gauger or shade assembler. Second, Plaintiff did not respond to Defendant's cross-motion with respect to his argument the ALJ failed to fully develop the record. *See* Opp'n at 8-9. Plaintiff's failure to respond to the cross-motion on this point waives the argument. *See Whitaker v. Astrue*, 2016 WL 146069, at *2 n.1 (N.D. Cal. Jan. 13, 2016) (deeming as waived arguments not raised in plaintiff's motion for summary judgment or in opposition to defendant's cross-motion for summary judgment) (citing *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1020 (9th Cir. 2011)).